## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RAYMOND KIMBLE, III**                               **CIVIL ACTION**

**VERSUS**                                            **NO. 20-708-JWD-RLB**

**HILLAR C. MOORE, III, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 22, 2021.

                                                               **RICHARD L. BOURGEOIS, JR.**
                                                               **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RAYMOND KIMBLE, III**                                          **CIVIL ACTION**

**VERSUS**                                                                   **NO. 20-708-JWD-RLB**

**HILLAR C. MOORE, III, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion to Dismiss filed on behalf of Defendants Hillar C. Moore, III, April Michelle Leon, Stephen N. Pugh, and Nineteenth Judicial District Attorney's Office (R. Doc. 52). The Motion is opposed.[1]

The *pro se* Plaintiff, an inmate currently confined at the Jefferson Parish Correctional Center, Gretna, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against numerous defendants[2] alleging that his constitutional rights were violated due to false arrest, false imprisonment, and malicious prosecution. He seeks declaratory and monetary relief.

Defendants assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To

---

[1] *See* Opposition to Defendants Motion to Dismiss originally filed as R. Doc. 63-1.
[2] The 24 defendants named in the plaintiff's Amended Complaint are: District Attorney Hillar C. Moore, Assistant District Attorney April Michelle Leon, Assistant District Attorney Stephen N. Pugh, Nineteenth Judicial District Attorneys Office, Public Defender Michael A. Mitchell, Office of the Public Defender, Public Defender D. Carson Marcantel, Public Defender Victor J. Woods, Jr., Detective David DeRoche, Detective Darren Parent, Detective Danny Forbes, Detective Adam Alford, Detective Michael Blondeau, Detective Adam Lea, Detective Joseph Nealand, Sgt. Michael L. Barrow, Daren Moses, Wroten Brumfield, Ira Roberts, Chief of Police Doe, Baton Rouge Police Department, City of Baton Rouge, East Baton Rouge Sheriff's Office, and Parish of East Baton Rouge.

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges the following: On April 15, 2016, Brian Ernst was arrested. Between April 15, 2016 and April 21, 2016 detectives DeRoche and Parent coerced Ernst into implicating the plaintiff in several crimes. On April 21, 2016, the plaintiff was questioned by detectives Alford, Blondeau, and Lea. Between April 21, 2016 and May 3, 2016, arrest warrants were prepared by detectives Forbes, Lea, Alford, and Nealand and

were approved by Sgt. Barrow, and officers Moses, Brumfield, and Roberts. All of the warrants were facially invalid because Ernst was coerced, there were other suspects not mentioned in the warrants, and exculpatory, physical, and scientific evidence were withheld from the warrants. In applying for the warrants detectives Forbes, Lea, and Alford deliberately and recklessly made false statements and omissions material to the finding of probable cause. The plaintiff was arrested on June 28, 2016.

On August 2, 2016 and August 22, 2016, Bills of Information were filed by assistant district attorney Pugh. Sometime around March of 2018, Ernst pled guilty to certain charges. The plaintiff filed numerous speedy trial motions, and the Court was ordered to commence trial on or before October 28, 2019. Assistant District Attorney Leon moved to continue the trial date. On October 25, 2019, the motion to continue was denied. On the same date, all charges against the plaintiff were dismissed in open court by Leon.

Throughout the proceedings the plaintiff was represented by public defender Marcantel from September of 2016 through September of 2017, and by public defender Woods from October 27, 2017 to October 25, 2019. These attorneys were assigned by attorney Mitchell. Marcantel never met with the plaintiff and denied the plaintiff's requests to adopt his speedy trial motions. Woods met with the plaintiff only once in October of 2019, and also denied the plaintiff's requests to adopt his speedy trial motions. Marcantel and Woods were working with the district attorney's office to delay the proceedings and deny the plaintiff a speedy trial.

Moving defendants first assert that are entitled to absolute prosecutorial immunity. The Fifth Circuit recently examined the scope and contours of prosecutorial immunity in *Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020). Therein the Court noted the following:

> "The Supreme Court extended absolute immunity for § 1983 claims to state prosecutors in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

In that case, a criminal defendant whose conviction had been overturned sued the prosecutor, several police officers, and a fingerprint expert, alleging "a conspiracy among them unlawfully to charge and convict him." *Id.* at 415–16, 96 S.Ct. 984. But the Court concluded that state prosecutors are absolutely immune from § 1983 damages claims based on activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. 984. Thus, the Court held that a state prosecutor who acts "within the scope of his duties in initiating and pursuing a criminal prosecution" is absolutely immune from § 1983 claims for violating a "defendant's constitutional rights." *Id.* at 410, 96 S.Ct. 984.

In discussing absolute immunity, "[t]he Supreme Court has made clear that 'it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance.' " *Loupe*, 824 F.3d at 538 (quoting *Kalina*, 522 U.S. at 125, 118 S.Ct. 502). "Thus, 'the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor.' " *Loupe*, 824 F.3d at 538 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)).

Instead, the Supreme Court has taken a "functional approach" to absolute immunity that "emphasize[s] that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). More specifically, the Court distinguishes between (1) actions taken "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State," and (2) "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606.

In *Buckley*, the petitioner sued "prosecutors for allegedly fabricating evidence during the preliminary investigation of a crime and making false statements at a press conference announcing the return of an indictment." *Id.* at 261, 113 S.Ct. 2606. The Supreme Court held that the prosecutors were not absolutely immune for allegedly fabricating evidence because they lacked "probable cause to arrest [the] petitioner or initiate judicial proceedings" at the time of the alleged fabrication. *Id.* at 274, 113 S.Ct. 2606. Thus, the prosecutors' "mission at that time was entirely investigative in character." *Id.* Importantly, however, the Court also recognized that "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination, ... a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Id.* at 274 n.5, 113 S.Ct. 2606; *see also id.* at 276, 113 S.Ct. 2606 ("When the functions of prosecutors and detectives are the same, ... the immunity that protects them is also the same.").

We have adhered to this functional approach to absolute immunity. We have held that conduct protected by absolute immunity "is not limited 'only to the act of initiati[ng judicial proceedings] itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate of

the State.' " *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (per curiam) (quoting *Buckley*, 509 U.S. at 272–73, 113 S.Ct. 2606). Thus, prosecutors are absolutely immune even for "[w]ilful or malicious prosecutorial misconduct ... if it occurs in the exercise of their advocatory function." *Cousin*, 325 F.3d at 635. But by the same token, "state prosecutors are not entitled to absolute immunity when they perform functions other than their quasi-judicial functions of 'initiating prosecutions and presenting the State's case.' " *Marrero v. City of Hialeah*, 625 F.2d 499, 507 (5th Cir. 1980) (quoting *Imbler*, 424 U.S. at 431, 96 S.Ct. 984)."

In the instant matter the plaintiff's allegations with regards to defendants Moore, Leon, and Pugh pertain to the act of initiating judicial proceedings and other acts that occurred in the course of their role as advocates for the state. The plaintiff has not asserted that defendants engaged in any act that was outside of the defendants' quasi-judicial functions. As such, moving defendants are entitled to absolute prosecutorial immunity with regards to the plaintiff's claims asserted again them in their individual capacities.

Even if the Court would allow plaintiff to amend his Complaint to include the allegations stated in the plaintiff's Opposition (originally field as R. Doc. 63-1), these allegations would still fail to establish that defendants engaged in any act, outside of the defendants' quasi-judicial functions, that caused a violation of the plaintiff's constitutional rights.[3] In his Opposition, the plaintiff alleges that defendant Moore visited the scenes of the crimes shortly after the crimes were committed. Plaintiff further alleges that an investigation was being conducted under the joint supervision and direction of the Baton Rouge Police Department and defendant Moore and/or Moore was giving the police advice. Moore also released a news statement in front of one of the burglarized homes.

---

[3] Four months after the filing of the instant Motion to Dismiss (R. Doc. 49) the plaintiff filed a Motion for Leave to Amend (R. Doc. 69) wherein he seeks leave to amend his Complaint to include the allegations stated in his Oppositions (originally filed as R. Docs. 63-1 and 64) with regards to defendants Moore and Woods. The plaintiff states that his Complaint, as amended, contains only a short and plain statement of his claim, while his oppositions provide the Court with explicit details regarding the defendants' actions.

These allegations mimic those asserted by the plaintiff in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) in a conclusory fashion, and lack any sort of factual specificity. In *Buckley*, the plaintiff alleged that prosecutors fabricated evidence during the preliminary investigation of the unsolved crime. Specifically, after three different experts could not match the plaintiff's boot with a print located on a door, the prosecution then contacted an unreliable expert to make a positive identification. The prosecutors were also present and participated in the questioning of witnesses and suspects before the case was turned over to a special grand jury whose task was to further investigate the crime. The Court concluded that the functions of the prosecutors and the detectives where the same before there was probable cause for the plaintiff's arrest, and the prosecutors were not entitled to absolute immunity. The Court also concluded that one prosecutor's action of making false statements during the public announcement of the indictment was not done in the prosecutor's role as an advocate for the state.

In his opposition the plaintiff makes no similar allegations. The plaintiff does not allege that defendant Moore fabricated evidence, questioned witnesses or suspects, or made false statements to the public. Rather, the plaintiff states that defendant Moore visited the crime scenes and gave a press conference. The plaintiff also does not allege that defendant Moore was involved in the questioning of Daniel Ernst who gave a statement implicating the plaintiff in the burglaries. Nor does the plaintiff allege that defendant Moore advised the police with regards to the questioning of Ernst. The plaintiff has not identified any action on the part of Moore that could have resulted in a violation of his constitutional rights. The allegations stated in the plaintiff's Opposition lack specificity and are insufficient to overcome the defense of absolute immunity.

With regards to the plaintiff's claims asserted against moving defendants in their official capacities, a suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent. *Burge v. Parish of St. Tammany,* 187 F.3d 452, 466 (5th Cir. 1999). Therefore, to determine whether Plaintiff has stated such a claim, the Court must conduct a municipal liability analysis under *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658 (1978). *See Nowell v. Acadian Ambulance Service,* 147 F.Supp.2d 495, 501 (W.D. La. 2001) (citing *Turner v. Houma Mun. Fire and Police Civil Service Bd.,* 229 F.3d 478, 483 fn.10 (5th Cir. 2000)).

To assert a claim of municipal liability under Section 1983, a plaintiff must adduce sufficient factual matter to satisfy three elements: (1) the existence of an official policy or custom; (2) a policymaker with final policymaking authority; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Davis v. Tarrant County, Tex.,* 565 F.3d 214, 227 (5th Cir. 2009). Municipal liability cannot be established by a theory of *respondeat superior. Monell,* 436 U.S. at 691. Instead, the plaintiff must point to some official policy or custom that caused their constitutional harm. *Id.* The Fifth Circuit Court of Appeals has unanimously defined an official policy for Section 1983 purposes as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984).

Whether an official has been delegated policymaking authority is a question of law for the judge. *Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 617 (5th Cir. 1999). In making this determination, a court should consider state and local "positive law," as well as evidence of municipal "customs and usages." *See id.* at 616; *see also id.* at 616 n.2 (observing that the Supreme Court has rejected the principle of a "de facto" policymaker, but also determining that continuous refusal of actual policymaker to review decisions of subordinate official would, "at some point," establish the subordinate official as the policymaking authority via custom or usage).

"Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) ). Elaborating on these requirements, the Fifth Circuit has stated:

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity. *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808–09 (5th Cir. 2017) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) ).

Finally, "[t]o succeed [in alleging 'moving force' causation], 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) ). "That is, 'the plaintiff must demonstrate that a municipal

decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.' " *Id.* (quoting *Brown*, 520 U.S. at 411).

In the instant matter, Plaintiff's Complaint, as amended, is devoid of any such policy or practice allegations with regards to defendants Moore, Leon, and Pugh. Additionally, Plaintiff has not alleged that any moving defendant is a policymaker with final policymaking authority. Plaintiff's allegations are devoid of any allegations against defendants pointing to an official policy or custom that caused the alleged constitutional violation. Accordingly, Plaintiff's Complaint fails to state a claim against defendant Moore, Leon, and Push in their official capacities.

Even if the Court would allow plaintiff to amend his Complaint to include the allegations stated in the plaintiff's Opposition (originally field as R. Doc. 63-1) the sole conclusory allegation is that it is a persistent and widespread custom of the Nineteenth Judicial District Attorney's Office to pursue criminal charges without probable cause and/or malicious and/or vindictive and/or selective prosecution. As noted by the Court in *Faire v. City of Arlington*, 957 F.2d. 1268, 1278 (5th Cir. 1992)[4],

> "We have consistently required a plaintiff to plead "specific facts, not merely conclusory allegations." A § 1983 plaintiff must plead specific facts with sufficient particularity to meet all the elements of recovery. This heightened pleading requirement applies to allegations of municipal custom or policy…Allegations of an isolated incident are not sufficient to show the existence of a custom or policy. "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy." To demonstrate a municipal custom or policy under § 1983, a plaintiff must at least allege…a pattern of similar incidents…" (citations footnotes omitted).

---

[4] *See also Robles v. Ciarletta,* 797 F. App'x 821 (5th Cir. 2019) (*"*To survive a motion to dismiss on an unconstitutional custom or practice claim, plaintiffs must point to factual allegations sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts. A pattern requires "sufficiently numerous prior incidents as opposed to isolated instances.")

In the instant matter the plaintiff has stated no facts in support of his assertion that it is defendants' persistent and widespread custom to pursue criminal charges without probable cause and/or malicious and/or vindictive and/or selective prosecution. The plaintiff has not alleged a pattern of similar incidents. As such his factual allegations of an isolated incident are not sufficient to show the existence of a custom or policy.

Finally, section 1983 only imposes liability on a "person" who violates another's constitutional rights under color of law. In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether a person or entity can be sued. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as an "entity to which the law attributes personality, such as a corporation or partnership." *See* La. Civ. Code Ann. art. 24. As such, the Nineteenth Judicial District Attorney's Office is not a person within the meaning of section 1983.

## RECOMMENDATION

It is recommended that the plaintiff's Motion for Leave to Amend (R. Doc. 69), discussed herein, be denied. It is further recommended that the defendants' Motion to Dismiss (R. Doc. 52) be granted, dismissing the plaintiff's claims against defendants Hillar C. Moore, III, April Michelle Leon, Stephen N. Pugh, and Nineteenth Judicial District Attorney's Office with prejudice. It is further recommended that this matter be referred back to the magistrate judge for further proceedings herein.

Signed in Baton Rouge, Louisiana, on November 22, 2021.

                                                             **RICHARD L. BOURGEOIS, JR.**
                                                             **UNITED STATES MAGISTRATE JUDGE**